The next matter on calendar is Sharmina Grimsby v. Erica Pan, 25-6100. That didn't take. It looks like we have one of the same people. Welcome back, Andra Lim. It looks like we've switched on the appellant side. Ms. Lim obviously heard the last arguments, and you've heard the last arguments. I don't know whether we'll go as much over, but we'll see. Go ahead. You can proceed. Good morning, Your Honors. My name is Chris Wiest. I represent Appellant Sharmina Grimsby on behalf of herself and her minor child, R.G. I'd like to reserve two minutes for rebuttal. Your Honor, the question presented in this case is similar to the last case, and it is whether the district court erred in denying plaintiffs a preliminary injunction to prevent the defendants from enforcing the California compulsory vaccination law against her or the private Christian school that she wishes to go to, Linfield Christian School, in this as-applied challenge. And given precedent, the answer to that boils down to whether she showed a likelihood of success on the merits, which in turn boils down to whether strict scrutiny was triggered under either the free exercise or hybrid rights theory. We contend that the answer to that question is yes. Strict scrutiny was triggered for three separate reasons. First, the state does have individualized medical exemptions that renders the vaccine law not generally applicable under Fulton. Second, California's extensive permission of comparably risky activities renders enforcement of the CVL to this plaintiff to be neither neutral nor generally applicable under Tandon. And third, because we're dealing with a substantial burden on Ms. Grimsby's rights to both religion and direct education of her children under the Yoder-Mahmood-Mirabelli line of cases, that is an exception to neutral and general applicability on itself, which also triggers strict scrutiny. Well, let me ask you this. In Doe v. San Diego Unified, the Ninth Circuit issued an opinion holding that California's vaccination policy was generally applicable. Is that case distinguishable from this case? And is Doe binding on a three-judge panel? Your Honor, obviously prior precedent and prior published opinions are binding on subsequent panels. But Doe is distinguishable. I don't believe anybody got into the nuts and bolts of the discretionary medical exemption scheme for one, which is the Fulton issue. I know that the comparability issues were not discussed in Doe, as they are here. And without question, the Yoder-Mahmood-Mirabelli issues were not addressed at all in Doe. And so for those reasons, this case is distinguishable. And that was an emergency vaccine mandate too versus a longstanding vaccine mandate, right? That is correct, Your Honor. So in Mahmood v. Taylor, you mentioned that the Supreme Court held that when a law imposes a burden of the same character as that in Yoder, strict scrutiny is appropriate regardless of whether the law is neutral or generally applicable. Does SB 277 impose a burden of the same character as that in Yoder? We would contend that it does, Your Honor. Okay, tell me why. Yes. Here, Ms. Grimsby – and let me be clear here. We're not talking about generally attending school in this case with religious exemptions. We are talking about Ms. Grimsby sending her child to a private religious school to receive a religious education. And so, I mean, even without the benefit of Mirabelli, which makes clear that Mahmood is not restricted to curricula decisions, the state is denying Ms. Grimsby the ability to direct the religious education of her child in a religious school. Even without Mirabelli, which makes clear it's not limited to curricula decisions, we have a restriction on her ability to enroll her child in a religious school, so we've got a curricula issue. Then we get to Mirabelli. Mirabelli involved – I'm going to call it the surreptitious gender transitioning of a child without the parent's knowledge. And this court suggested that Mahmood was cabined to curricula decisions, and the Supreme Court said no, it's not. In fact, the burden was worse than Mahmood because there was treatment, if you will, mental treatment that was being directed to the child. Here the state is directing physical treatment to the child, which is even worse than Mahmood, even more of a burden. And so Mahmood is a tribute. Well, except the state gets some – they get something for its public health. They're the ones that are in charge of public health and making those broader decisions, which in the other situations it was really – they're ideological or how the parents – really interfering with parents' rights to parent their own children in the way that they see fit. Does that make a difference? No, Your Honor, and there are two cases, recent cases from the U.S. Supreme Court, that make clear that there is no public health exception to the First Amendment and its free exercise clause. First, Roman Catholic Diocese v. Cuomo. That was a COVID-19 case, and the Supreme Court indicated in that case the Constitution doesn't sleep during a pandemic. And then we get to Tandon. There was a pattern of Ninth Circuit decisions saying, hey, there's kind of a public health exception, and the Supreme Court said no. The First Amendment applies. Comparability applies in the public health setting. So this concept that somehow there's an exception doesn't exist. And I do want to address, because I think it's important, the discussion in Yoder about public health because – and this is, I think, important. I think with all due respect to Judge Wilkinson, I think he got it wrong in Perry. Obviously, I'm counsel of record in that case and I'm familiar with it. But Judge Niemeyer had the right of it. And if you look at Yoder itself and you look at that case, they don't get into this discussion of Prince and Jacobson and everything until after they have decided that strict scrutiny applies. At 220 – at 221, they begin the analysis of strict scrutiny and then they start talking about the public health issues. Everything before that is talking about the substantial burden on religion, this collision, if you will, between the right to educate – between the right to direct education and religious beliefs that are all intertwined, which we have here with Ms. Grimsby, and where the court says that's a substantial burden. And then the court thing gets into the application of strict scrutiny in which the government has to show a compelling governmental interest and then it's got to be narrowly tailored. But there's a gloss on that in light of recent free exercise jurisprudence. And I'm happy to talk about why they fail strict scrutiny, but I wanted to first kind of address why we're at strict scrutiny and why all three of those reasons do apply, both Fulton, Tandon, and the Mahmoud-Yoder framework. So in your view, the Yoder doesn't have anything to do with – you just ignore public safety concerns? Your Honor, it becomes relevant once you get to the strict scrutiny analysis. In other words, once strict scrutiny is triggered, it becomes relevant in terms of – and I know that this went to one of your prior questions, Judge Callahan, which was does the vaccine matter? Does the disease matter? All of that gets into this notion of once you're at strict scrutiny, can the government meet it? But it does not matter in the context of is there a substantial burden? Is there this collision on the right to parent, on the right to religion? Is strict scrutiny triggered in the first place? It matters in the we have strict scrutiny, do they meet strict scrutiny? That was the second part of the analysis. You don't think when the court made reference to the – we're not dealing with public safety and they cite those several cases. Your Honor, that comes after. Again, I would point you to – I understand that. I understand where it came. I mean I've read it. I know where it came from and where it's located within the opinion. Right. It comes after the does it meet strict scrutiny. And I'm happy to walk the court through why they don't meet strict scrutiny in this case. Is there a generalized – It seems to me that Yoder was all about – the way to look at – well, I don't want to say the only way. But they were really concerned about the whole community, the religious community in that case and preserving the rights of the parents to raise their children within that community. Well, it was sincerely held religiously within the case. That's what the case is all about on the parent side. Right. And Mahmoud makes clear that Yoder wasn't sui generis. It wasn't limited to its facts. It's a generalized precedent of the court. You can't confine it to its facts, as courts try to do for a period of time. And so really we're looking at is there a sincerely held religious belief that intersects with the right to parent and the right to direct education, which we've got here in spades. And then we've got strict scrutiny. Counsel, I have a question. You call that a hybrid right. Where does that phrase come from? Why do you have to call it a hybrid right? I don't think Mahmoud uses that term, does it? I think it comes from Smith, Your Honor. But, I mean, why do we have to consider it that way? Isn't it just a free exercise right of parents? Yes. I think you could look at it that way, that it is an intersection of the right to parent, the right to direct education with the free exercise. Because then if you're talking about a hybrid right, I presume you're talking about a substantive due process right, right? What's it hybriding with? What's it mixing with? Right. It's free exercise and the right to parent. And it's a substantive due process? Yes. I mean, it's kind of an exercise. But why do you don't need that? You could just say it's a free exercise right for your parents. It is. It is a free exercise right.  Your Honor, I'm not going to – if you – I do want to spend just a little bit of time, and I see that I'm running very short on comparability. One of the things that –  Before you move on, you were going to walk us through how they – how they fail strict scrutiny. Can you explain why you think we should reach strict scrutiny versus just remanding down to the district court? Because, Your Honor, this was a preliminary injunction decision. And I think the district court might have gratuitously indicated that he thought it also met strict scrutiny. I'd have to go back and look at the opinion. Well, even if so, we could take it back on appeal if the district court gets that wrong. That's true, Your Honor. You could. We would ask that you not. We think the issues have been fully pressed and briefed. Of course, everyone wants to win outright. But then also there is – when someone hasn't had the benefit of certain cases, or if this court hypothetically were to say strict scrutiny, they wouldn't have had the benefit of that. And also Mahmoud and Miller, you know, there's been developments. Mahmoud had been decided and was expressly pressed below. I agree the Miller GBR – I'm also one of the counsel record in the Miller case – had not occurred yet at the U.S. Supreme Court. But, you know, the issue was pressed. It was rejected by the district court. We contend wrongly. And we think you should, particularly because – Can I see who your district judge was here? It was Judge Barat. Oh, Barat. Yes. Okay. Didn't he have most of these cases? I think he – I think there was some consolidation effort in the central district. I think the last one was Huff in San Diego. One of them was Huff. And I do see that I'm out of time, and I'm happy to address why they failed scrutiny. Well, if we – let me see if – No, I would like you to walk us through your strict scrutiny analysis. Yes, Your Honor. One of the issues – and my friends on the other side never contend with it in their brief. Once we're at strict scrutiny – and this is in Fulton at 541 – it's not just, hey, there's a generalized interest for vaccination. That's not the test. They have to show that there's a specific harm of granting exceptions to the particular claimant. In this case, Ms. Grimsby's daughter. And the record in this case, they put on a declaration in which they kind of concede because she's got a lot of the vaccines, that there's no particular harm here. And they echo the Holt v. Hobbs, hey, if we grant one to you, we've got to grant one to everybody, so no exemptions. And the Supreme Court has made clear, again, in the Holt case, you can't do that. That's improper. And when you look at both Fulton and Mahmoud, once you start allowing any opt-outs, generally the Supreme Court says you don't meet strict scrutiny. And under both of those cases, they fail strict scrutiny here. They've got a burden of proof if strict scrutiny applies. They failed to meet it here. There was evidentiary submission. So for all of those reasons, they fail strict scrutiny once we're there. And there's other reasons too that was in our briefing. When you're in strict scrutiny, could you consider the exceptions again? Like the fact that they let IEP and conditional students. Absolutely. Yes, and the Supreme Court says that. That very fact in Fulton and that very fact in Mahmoud, where in Fulton languages, obviously you're allowing some opt-outs. Your policy shows you can – I think the term the U.S. Supreme Court uses is you can brook no opt-outs. And the fact that you do undermines your contentions on strict scrutiny. So I think the fact that they do have these opt-outs runs headlong into the language in Mahmoud and Fulton that says once you're allowing opt-outs, you can't meet strict scrutiny. And that's a problem they've got. And then can we consider the fact that 46 other states apparently have the religious exemption? Does that fit into strict scrutiny as well? It does, Your Honor. And I think that is – I know Judge Callahan asked that in the first case. That I think is where the relevance of the 46 other states applies because if you're looking at least restrictive, if other states are able to manage it, 46 of them, then obviously they've got a strict scrutiny problem because they can't do what 46 other states do. Isn't the state of California – it can exercise its police power in the way that it deems most beneficial to the population, which is around 40 million people. We are the size of a nation too. Doesn't that count for something in the states? Your Honor, there's a provision in the United States Constitution. It's the Supremacy Clause, and it says that the state's general police power has to yield to constitutional rights. And so once we're in constitutional – The court looks carefully though what the states do when they're exercising their police power, correct? They do except when we've got situations like this, when we're impinging on fundamental First Amendment free exercise rights. Do you think the state was exercising its police power here? In enacting the 2015 – Yes. They were. I mean that is a general police power. The problem is it has to yield to the First Amendment and it has to yield to the free exercise. Does it always yield? Not 100 percent of the time, Your Honor. I do a lot of constitutional litigation. I've done judicial speech cases. There are some regulations that are upheld that do meet strict scrutiny. But it is a demanding task, and it is one that the state has the burden of meeting. So just going back to the other exceptions in that particular legislation, what do you consider the religious exception is closest to or is comparable to? One of the most egregious, and we briefed it, and I was tooling around on the State Department of Ed's website last night that the court can look at. I'm happy to file a 28-J letter. There are 670,000 adults employed in the California school system in classrooms, on buses, coaches. All that data is available. None of them are required to be vaccinated. If we're concerned about the spread of disease in classrooms, how do you allow a population that's equal to about 13 percent of the student population to be unvaccinated? That comparator is devastating to any of the state's arguments. And we can talk about the medical exemptions. Your Honor, I heard your question about – with respect, though, a student that's not vaccinated for medical reasons poses the same public health risk that a student that's not vaccinated for religious reasons. That's a comparator. The IEP, to the extent that they're in school, the delay is a problem. We don't require it of 18-year-olds or older. That's a problem. They're in classrooms too. Sometimes they're juniors and seniors in high school. All of them are allowed to be unvaccinated. All of those are comparators under Tandon that create real problems for the state. And I would add the state's got – they're state of interest. I understood that although the state wasn't able to give exact numbers but Judge Bumate was questioning, are these religious exemptions like huge numbers of people? I mean – They're less – yeah, they're less than – And the only thing that the state can point to that I'm aware of is other states that only have religious exemptions because what California had was a PBR that basically if you've got a general philosophical belief, that was lumped in with the religious exemptions. By the way, they had cracked down on that the year prior to the total PBR repeal where they required an affidavit, additional requirements to claim the PBR. They never really waited for that to work, I think in part because of the Disneyland outbreak. But again, I think it's a smaller subset of the PBR numbers, a far smaller subset. It typically is because having a sincere religious belief is one thing. Having a generalized philosophical exemption is something else. Let me ask you one other question. Isn't the – we're dealing here with compulsory public education, correct? We are, Your Honor. Isn't that different than Disneyland and going to other places? This is compulsory. I think that's part of the problem why we've got such a Mahmoud issue because you're forcing people into a Hobson's choice between going to jail on the one hand and sincere religious beliefs on the other. I think that's part of why we have such a problem. Has anybody gone to jail here, do you know? For not attending – For not getting their kid vaccinated and still letting them go to – not putting them back – not letting them go to school. I think the alternative is jail or homeschooling, and we know that homeschooling is no substitute under Mahmoud, right? I mean the Supreme Court said you can't just say you can ship them off to homeschool. That's good enough. All right. Can I ask one more question? Yes. Could you further explain the Fulton argument? Because it does seem very different than Fulton where, if you heard my last questioning, the discretion, as I understand it, is to deny a medical exemption, correct? In part. I think in the first instance they're setting individualized criteria to be applied by physicians, which itself is a mechanism for individualized exemptions. And then there's a second tier of, hey, we can yank it back. It's a medical determination, so it has to be individualized, I assume. Right. Okay. Right. The state has deputized physicians to undertake this analysis. So I think you've got it there on the front end, and then you've got the discretion yanking it back by the state. But Fulton was very different, wasn't it? Wasn't it just almost a discretion to just grant the benefit, the adoption benefit? Well – And here it's the opposite, right? It's a discretion to yank it away. Right. So it seems not the same. Well, Your Honor, it is a system of individualized exemptions, right? And that – Fulton says a 535 is sufficient to trigger – But it seems different when you're – individualized exemptions is to narrow the benefit versus to expand the benefit, where if you're narrowing it, you're less – you're opening up to less people versus opening up to more people, which would – seems discriminatory against the religious. But here when the discretion is making it smaller, it doesn't seem like you're discriminating against the religious in that way. Well, except for this, Your Honor. The state has – in some ways it's worse, right? Because if you think about it, the state has said there will be no religious exemptions whatsoever. We're not going to allow it by statute. And so the discretion of taking away any consideration of religious exemptions is done by statute. And then we're going to allow physicians and state administrators to decide essentially what is a sufficient ground for a secular exemption, a medical exemption. So I think we do have a Fulton issue here. And frankly, the ability to take it away is a system of individualized exemptions under Fulton in FCA versus San Jose also. So I think we've got those issues in this case as well. Thank you, Your Honor. All right. Well, we've taken you way over your time. After we hear from your friend on the other side, I'll ask my colleagues if they have any additional questions of you. And if so, I'll give you a little rebuttal time. Thank you, Your Honor. Welcome back. Good morning again. Andra Lim on behalf of Dr. Erika Pahn. I wanted to address some of the issues that came up in the argument we just heard. So first, the question of whether Doe is binding. What this court has said is that the published opinion of a motions panel controls if there's the same legal issues being decided by a future panel. And I do think Doe is directly on point in the Grimsby case. And that's because, one, Grimsby involves some of the same legal issues that were decided in Doe. Not every issue in Grimsby was decided in Doe. That case didn't involve the Mahmoud issue. But there are other issues under Smith that were decided in Doe that are the same in Grimsby. The facts are not materially distinguishable in Grimsby as they were in Doe. And then Grimsby arises in an indistinguishable procedural posture. It arises from the denial of a preliminary injunction. And so in Grimsby, we do think that Doe is directly, directly on point. Does this make a difference that the Doe was in an emergency, COVID emergency basis, and this is a much more permanent, long-term regime? I think for the particular issues I'm thinking of, the facts that Doe is relying on weren't related to the COVID-19 pandemic. And so I can just walk the court through, if it's helpful, the areas where I do think Doe is binding. I also wanted to address the Yoder case, the Mahmoud case, and the Mirabelli case. We think that Judge Wilkinson got it absolutely right in the Perry case when he said that those cases are different from a school immunization law and don't require applying strict scrutiny here. So first, he explained that in Yoder and Mahmoud, the burden was ideological indoctrination. Here, the school immunization law doesn't require exposing students to beliefs that are hostile to their parents' beliefs. It doesn't require extolling the moral virtues of vaccination. So the burden here is just really, really different. I'd also point out that Yoder has that explicit language about the law there not being one where public health and safety was threatened. And I would emphasize that Yoder actually has a discussion of when public health and safety regulation is consistent with the free exercise clause. And it has a footnote where it specifically cites a case that upheld a school vaccination law against a free exercise challenge. That's footnote 20 of Yoder, the Wright v. DeWitt case. And so Yoder itself strongly suggests that a compulsory school immunization law is consistent with the free exercise clause. The Supreme Court has statements, again, in Prince and then also in Smith about those sorts of laws being constitutional. And I'll note that when the court in Smith did have this discussion of compulsory immunization laws not being subject to strict scrutiny, again, what it cited was a case about a school immunization law in particular. What would be your response to your friend on the other side talked about? And I had raised like 46 other states are obviously managing that. And he said that would come into play when you decide, when you get to the issue of if hypothetically, if strict scrutiny were the standard that what other states are doing and managing that that would be something to consider. What's your response to that? I do think the strict scrutiny analysis could consider what's going on in other states. And I think we would emphasize and we would pursue if this case were remanded for development of a factual record on strict scrutiny, I think we would be interested in exploring, you know, what is the public health landscape in those other states? And I believe it's actually 45 that do have a religious exemption. You know, what are disease outbreaks like in those states and how do they compare with California? And so I do think the experience of other states is relevant to the strict scrutiny analysis. I think we believe that we could ultimately show that it doesn't make a difference in the sense that this law does ultimately satisfy strict scrutiny, even if other states have decided to take a different approach. And then going back to the Yoder issue, my friend on the other side said that the public health piece of Yoder is something that only comes into play once strict scrutiny is decided. I don't think that's correct. I think the way that the Yoder statement about public health and safety laws works is that it's sort of referring to this very longstanding historical principle that governments can regulate for public health and safety reasons without violating the free exercise right. I think in Royce there's a helpful amicus brief from religious and civil rights organizations that discusses how the founding era conception of the free exercise right was that it did not override governmental regulations for public peace and safety. And so it's just this longstanding historical understanding of the free exercise clause that continues to govern, especially because, again, it hasn't been overturned by anything that the Supreme Court said in either the Mahmoud case or in the Mirabelli case, which was a preliminary decision. So let me ask you this. Is Yoder a substantive due process case, or is it a free exercise case? So Yoder does have a very significant free exercise clause analysis. I think the Supreme Court at one point described Yoder as a hybrid rights case, but then the Supreme Court in Mahmoud said it wasn't doing hybrid rights. It was just relying on free exercise and sort of framed Yoder as a free exercise case. And again, what Yoder says is that the free exercise clause does allow states to regulate for public health and safety. On the strict scrutiny point, I did just want to address the point that came up, which is that the only harm that should be considered is the harm to the particular plaintiffs at issue in the case. That's not consistent with what the Supreme Court has said. The Supreme Court has said that when you're doing the compelling interest analysis in a free exercise case, you're looking at not just the plaintiff, but also those similarly situated to the plaintiff. So when the Supreme Court discussed this in the Gonzalez case, it looked to Yoder. It said there were only three parents there, but the court was asking about a general Amish exemption to the compulsory school attendance law. And so here I think for a strict scrutiny analysis, it would be appropriate to look at not just one plaintiff, but everyone who could seek an exemption from the vaccine law on religious grounds. So if we were to conclude that your compelling state interest is herd immunity, that's why you're doing this, what would be your response to, even though I know it's not exactly in the record, but he says that there's statistics out there that there's tons of people that are allowed to, I don't know, ride on buses or do whatever, and they don't have to have vaccinations. So as for adults, adults in schools, first, I'm not sure that it's factually correct that they're not required to have vaccinations by any policy. The school immunization law itself doesn't speak to teachers or other staff. But we know from, for example, the Doe case, that case referred to a teacher vaccination mandate. There was a case originally scheduled to be heard with these other cases today. The Dozier case, where one of the plaintiffs there is a parent who alleged in the complaint that he works at a school and is subject to a vaccination requirement. And so I don't think it's necessarily true that teachers, staff. It's not a statewide law. It is not a statewide law. That is that is correct. I thought we're not allowed to consider anything that's not a statewide law. Well, I think I think what what the question is here is whether there are comparable risks. And I think the risk or comparable undermining of the state's interest. And I think that that interest wouldn't be comparably undermined if teachers and staff were already subject to some other policy that did require them to be vaccinated. You know, because you argue and like if the fact that because there's a contested fact, whether or not conditional students are actually verified after. And I thought you argued that we can't look into that, whether or not laws are actually being broken. Well, I do think on on whether conditional students can be verified, there is a process for verifying them. And the regulations are clear that they do have to be excluded if they don't. I think one of the parties made allegations that are actually not verified. Is that right? I do think there was an allegation maybe in the district court that that some schools were not complying with the very clear requirement to to exclude them from from schools. Also, on the teacher point, I would I would say that the most, you know, on point precedent we have for this situation, which is, you know, you have a law that just covers one class, but it doesn't regulate. It doesn't touch other conduct. I think that's most similar to the Lakumi case where the court was considering an ordinance that, you know, touched one thing, but then just left a bunch of other stuff unregulated. And the problem in Lakumi was that the law was so targeted at religiously motivated conduct. That's why the court found it not generally applicable. And so here I don't I don't think, you know, this law can be can be said to be targeting religiously motivated conduct. It applies to, you know, basically all students who are in public and private school requiring them to get to get vaccinated. And I also think it would be concerning if, you know, the fact that a law were limited to one sort of easily definable class of people. If the fact that it didn't apply to another readily distinguishable class of people were enough to undermine it. Well, if there were hostility in the record, I think they there isn't the same hostility in this record that maybe there are on some other records, right? There is no hostility in the legislative history in this case. It might have been one person that said something. It seems to I seem to. But not like in Masterpiece. Yes, this case is really distinguishable from Masterpiece. And I think it was in the Royce case where they referred to comments by two different people. And neither of them actually referred specifically to people with religious objections to vaccines. It was a general reference to people who that's kind of why I was asking you which community they were targeting, because if they named it, then that would be hostility. Right. I think it would be hostility if. Yeah, go ahead. Sorry. I mean, I think there might be a neutrality problem, you know, in said that this religious community has high rates of disease and therefore we're doing this right. I think there I think there would be a neutrality problem if it's if it's if if what if what the legislative history reflected was sort of an object to specifically target religious conduct. But that doesn't appear at all in the legislative history. And I would just note again that the comments by the two people that that have been pointed to were made after after the passage of the law. We don't appear to have any additional questions. If you want to take a minute, that's fine, too. If there's something else you want to talk about, because we've been talking. Sure. I'll just make one one final point, because, you know, my friend on the other side did did mention the medical exemption as one that that they believe is comparable to a religious exemption. And, you know, I think every court of appeal that is considered, you know, a similar question has has said that they're not comparable. You know, one of the interests here is protecting the health and safety of individual students. A medical exemption, you know, directly promotes furthers that interest. It ensures that you're changing the interest again. I mean, the statute says total immunization. You're saying immunization in schools. Now you're saying it's the health of the of the individual child. Right. That it just seems like you're shifting your interests depending on the question. So if I could, I think the legislative history is clear that the legislature had two interests in mind here. One is the herd immunity interest. And the second is a protecting individual students. So medical exemption does not support herd immunity. Right. So the contrary to the herd immunity. Yes. So the whole point of herd immunity is that it protects students who cannot safely be vaccinated and other vulnerable people. So medical exemption is contrary to that interest. Correct. No, medical exemption is consistent with the purpose of herd immunity. But even if you disagree with that, how is it consistent? Because the whole point of herd immunity is to protect people who are vulnerable, which includes people who can't safely be vaccinated. But even if you disagree with that, you know, I do think that the legislative history is clear that the legislature was also interested in protecting the health and safety of individual children. There is discussion of the legislative history about how vaccines work on an individual level to protect you. There's discussion on pages. I think it's fifty seven to forty eight and to forty nine of the Grimsby excerpts of record talking about, you know, how SB 277 would protect not just communities, but also individual students. And I think the Supreme Court has explained on multiple occasions that this is the reason why school vaccine laws exist. School vaccine laws exist. The Supreme Court said in the Vernonia School District case. So that students get vaccinated for the good of themselves and for others. In Prince, the Supreme Court said that the free exercise right doesn't allow the parent to to expose the community or the individual child to ill health. You mentioned we need to look to California state law on what the purpose of this statute or interest of the state is. Is there a case that's that a California state case that says that the interest of this vaccine regime is those two dual purposes? I'm not sure that there is, but I do think my point about California state law was a little bit narrower. It was just about if you're looking to the specific statute, the specific statutory language, what total immunization means in that statute. I think that's a question of California and where it is. So is there a case that says total immunization does not mean total immunization? I am not I'm not aware of one. Okay. Isn't say eventual. Yes, it says eventual total immunization. And again, you said this this this particular provision had been in the statute for some time. Yes, since at least 90 and since at least 1995. So it was in effect while the personal beliefs exemption was in effect. And so it's a little odd to think that the legislature meant immunization of everyone at a time when it had an exemption for for personal beliefs as well as medical exemption. Thank you. Thank you. All right. Not necessarily. OK, not necessarily. You have no time left. OK, we took you 10 minutes over. I was only giving you rebuttal if any of my colleagues have additional questions. OK. Nice run to the podium. Nice try. But that this matter will stand submitted.
judges: PAEZ, CALLAHAN, BUMATAY